NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**20-593**


**JOHNATHAN WHATLEY AND
KATHERINE NICOLE WHATLEY**

**VERSUS**

**DENNIS RAY BEAUGH AND
TERESITA DIANE BACHMEYER ROSAMOND BEAUGH**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-3564
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Candyce G. Perret, and Jonathan W. Perry, Judges.


Saunders, J., dissents and assigns written reasons.


**AFFIRMED.**

**Skipper Maurice Drost**
**Drost Law Firm, LLC**
**411 Clarence Street**
**Lake Charles, LA   70601**
**(337) 436-4546**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Dennis Ray Beaugh**
      **Teresita Diane Bachmeyer Rosamond Beaugh**

**Maurice L. Tynes**
**Maurice L. Tynes & Associates, PLC**
**4839 Ihles Rd**
**Lake Charles, LA   70605**
**(337) 479-1173**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
      **Johnathan Whatley**
      **Katherine Nicole Whatley**

**PERRET, Judge.**

Appellants ("the Beaughs") appeal the trial court's determination that they violated the Restrictive Covenants and Conditions of their subdivision by constructing or planning to construct a driveway on their west property line instead of their east property line, entitling their neighbors, Appellees ("the Whatleys"), to injunctive relief. The Beaughs submit they validly amended the Restrictive Covenants and Conditions, deleting the driveway location requirement and, thus, the trial court's judgment should be reversed. For the following reasons, we affirm the trial court's judgment.

**FACTS AND PROCEDURAL BACKGROUND:**

The Holbrook Court South Subdivision, from which this dispute arises, is comprised of five lots. All lots have northern fronts on Holbrook Road. Lots 1 through 4 are rectangular in shape, approximately 5 acres each, and lie adjacent to one another. Lot 5 is adjacent to Lot 4's east boundary. Lot 5 is approximately 21.52 acres and forms an irregular L-shape, adjacent to the east property line of Lot 4, but continues south and west, so that it also forms the southern boundaries of Lots 1 through 4.

The developer of Holbrook Court South Subdivision, Harry Shaheen Development, LLC, created "Restrictive Covenants and Conditions" for the subdivision and recorded those restrictions on November 13, 2017, at File #3296942, Conveyance Book 4336, Page 682. Pertinent to this case, those restrictions stated:

> Appearer desires to establish certain restrictive covenants and conditions to apply to all of the lots contained in said Holbrook Court[] South, such Restrictive Conditions and Covenants to inure to the property and to bind each and every successive owner of lots, and, accordingly, Appearer does hereby create and establish the following

restrictive conditions and covenants running with the land for a period of twenty-five (25) years and for successive ten (10) year periods as provided in paragraph number 12 hereinafter, to apply in common to all of Holbrook Court[] South:

. . . .

12) These restrictions shall be effective upon the filing of this instrument in the Conveyance Records of Calcasieu Parish, Louisiana, shall apply to and run in favor of all lots in the subdivision, shall be binding on all persons and shall remain in force and effect for a term of 25 years. At the end of the initial 25 year term, and at the end of each successive 10 year term thereafter, unless revoked during the initial 25 year or successive 10 years by agreement of the owners representing a majority of the land area affected by these restrictions, excluding streets and street rights of way, these restrictions shall renew and extend automatically for a term of 10 years without any action or documentation whatever provided that at any time during the initial term, or the successive 10 year terms, the restrictions may be amended or terminated for the whole for any part of the restricted area by agreement of the owners representing a majority of the land are [sic] affected by these restrictions excluding streets and street right of ways.

13) In addition to all other remedies, these restrictions may be enforced by mandatory and prohibitory injunctions by any owner whose land is affected by these restrictions.

. . . .

22) All driveways must be hard surfaced with a minimum of an aggregate material. All driveways must be along the East property line of each lot. All driveways shall have a constructed turnaround "T" shaped driveway, which will allow all vehicles to exit each lot driving face forward. No vehicle exiting any lot along Holbrook Park Rd[.] will be allowed to back onto Hollbrook Park Rd.

On April 20, 2018, the Whatleys purchased property from Harry Shaheen Development, LLC, in the Holbrook Court South Subdivision. The property is described in the Cash Warranty Deed as follows:

Lot Four (4) of HOLBROOK COURT SOUTH SUBDIVISION, a subdivision as per plat recorded in Plat Book 53, Page 21 of the records of Calcasieu Parish, Louisiana, together with all buildings improvements situated thereon.

2

The Whatleys developed a home on Lot 4 and complied with the requirement that their driveway be constructed on the East property line of their lot.

Approximately one year later, on April 23, 2019, the Beaughs also purchased property from Harry Shaheen Development, LLC, in the same subdivision. The Beaughs purchased Lot 5, which is situated to the East of, and adjacent to, the Whatleys' property. Evidently, the Beaughs have planned to construct or have constructed their driveway along the west property line of Lot 5.

Thus, the location or planned location of the Beaughs' driveway led the Whatleys to file a petition on July 29, 2019, seeking preliminary and permanent injunctions prohibiting the Beaughs from constructing their driveway on their west property line and mandating the driveway be located on the east property line. Asserting the above stated facts, the Whatleys argued that the location or planned location of the Beaughs' driveway violates the Restrictive Covenants and Conditions of the subdivision.

Prior to answering the suit, on August 26, 2019, the Beaughs filed an amendment to the Restrictive Covenants and Conditions in the Conveyance Records that revoked the requirement that all driveways be constructed on the east property line of each lot. Therefore, in answering the Whatleys' petition, the Beaughs argued that they were not in violation of the Restrictive Covenants and Conditions. The Beaughs further claimed that, pursuant to paragraph 12 of the restrictions, they had the power to amend the restrictions as owners of a majority of the land affected by the restrictions.

A hearing on the preliminary injunction was set for September 23, 2019, but was continued until November 19, 2019. At the hearing, the Whatleys argued that the Beaughs could not amend the restrictions because whether the Beaughs were

3

the majority landowners with power to amend the restrictions was indeterminable based on the plats and deeds. Specifically, the Whatleys pointed to a plus or minus symbol after the acreage listed for each lot on the plat. Consequently, the original restrictions are still controlling, and driveways are required to be constructed on the east side of the property line.

The trial court heard testimony from three witnesses: Mr. Whatley on behalf of Plaintiffs, and Mrs. Beaugh and Mr. Harry Shaheen on behalf of Defendants. Mr. Whatley testified that he was aware of the subdivision restrictions prior to purchasing Lot 4, and those restrictions, particularly the driveway location requirement, were one of the reasons he and his wife committed to buying the lot. Mr. Whatley also testified that the driveways of Lots 1-4 are all located on the east property lines, whereas the Beaughs have constructed a driveway and culverts on their west property line.

Mrs. Beaugh testified that she was unaware of the subdivision restrictions at the time she and her husband purchased the property. After becoming aware of the restrictions, Mrs. Beaugh stated they amended the restrictions to permit the construction of their driveway on their west property line.

Mr. Shaheen was called to testify by the Beaughs and asked to interpret Paragraph 12 of the restrictions regarding amendments. Mr. Shaheen stated that the restrictions were "boilerplate language that we use in our development and I really don't want to be the one to interpret what this actually means." He also agreed that the acreage designations for each lot are approximate, but pretty accurate, and that it "seems" Lot 5 comprises a majority of the land in the subdivision. The parties also submitted deeds, plats, a surveyor description, google images, the restrictions, and the amended restrictions into evidence.

4

After consideration of the evidence and argument, the trial court granted the Whatleys a permanent injunction and stated it would "sign a judgment upon presentation." The trial court signed a written judgment granting injunctive relief to the Whatleys on January 6, 2020. Before a written judgment was signed, the Beaughs filed a motion for new trial on December 10, 2019. The motion for new trial was heard and denied on February 10, 2020, with the trial court again stating it would "sign a judgment upon presentation." The judgment denying the motion for new trial was signed on February 11, 2020, and notice mailed on March 9, 2020.

On March 5, 2020, the Beaughs filed a Motion and Order for Suspensive Appeal, which was granted, setting a return date of March 10, 2020, and requiring the Beaughs to furnish a $1,000.00 bond. On appeal, the Beaughs assign one assignment of error: the trial court erred in granting the judgment in favor of the Whatleys.[1]

**DISCUSSION:**

Our law distinguishes between prohibitory injunctions and mandatory injunctions; the former restrains conduct while the later "commands the doing of some action[.]" *Concerned Citizens for Proper Planning, LLC v. Par. of Tangipahoa*, 04-270, p. 7 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664; *see also City of New Orleans v. Bd. of Directors of La. State Museum*, 98-1170 (La. 3/2/99), 739 So.2d 748. The injunction sought determines the level of proof required. A prohibitory injunction only requires a prima facie showing; however, a mandatory injunction "has the same basic effect as a permanent injunction" and requires a

---

[1] In their opposition, the Whatleys assert in their Statement of the Case and as an Issue For Review, that this appeal was filed untimely and that the bond was untimely. Appellees do not expand on these allegations in their Argument but suggest that this court should dismiss the appeal summarily. We decline do to so, finding nothing in the record to support a finding that the appeal is untimely.

showing "by a preponderance of the evidence at an evidentiary hearing that [the party] is entitled to the preliminary injunction." *Meredith v. I am Music, LLC*, 18-659, pp. 5-6 (La.App. 4 Cir. 2/13/19), 265 So.3d 1143, 1146 (quoting *Denta-Max v. Maxicare La., Inc.*, 95-2128, p. 3 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, 997).

The Whatleys sought both a permanent and preliminary injunction in their petition and requested an Order to show cause why the Beaughs "should not be preliminarily enjoined from constructing a driveway on Lot 5's west property line, and mandating construction of a driveway on Lot 5's east property line." After the preliminary injunction hearing, the trial court issued a judgment granting an injunction in favor of the Whatleys and "prohibiting and enjoining Defendants from locating or constructing a driveway at any location" other than the east property line. Additionally, the judgment mandated the removal of any driveway, or portion thereof, constructed on the west property line of Lot 5. Thus, the injunction sought was both prohibitory and mandatory, requiring an evidentiary hearing.

> Regarding the standard of review for injunctive relief, this court has said:
>
> A trial court has broad discretion in its decision to grant or deny a preliminary injunction and that decision will not be disturbed on review absent an abuse of that discretion. *Yokum v. Pat O'Brien's Bar, Inc.*, 12-217 (La.App. 4 Cir. 8/15/12), 99 So.3d 74. "That broad standard is, of course, based upon a conclusion that the trial court committed no error of law **and was not manifestly erroneous or clearly wrong in making a factual finding** that was necessary to the proper exercise of its discretion." *Id.* at 80.

*Deshotels Plantation, LLC v. Torrent Gulf Coast, LLC*, 19-750, pp. 3-4 (La.App. 3 Cir. 4/22/20), 297 So.3d 1034, 1037 (emphasis added).

In rendering judgment in this case, the trial court stated the following reasons for ruling at the hearing:

6

And, it's clear to the Court that the Defendants concede that at the time this [(the original restriction regarding placement of driveways on the east property lines)] was a valid restriction, there would be no need to amend it if they did not feel the restriction was applicable to them.

So, if the amendment is not valid, the ruling for the Court is easy. The amendment is not valid. Mr. Whatley should be granted the relief that he seeks.

So, what's offered to the Court is the affirmative defense from the defendants that the restrictions have been amended validly so, thus, the Beaughs are free to place their driveway in whichever position they wish to place it because that restriction would no longer apply to them because of a valid amendment.

I do want to say, just so that the record is clear, I do believe the testimony of Mr. Whatley that this restriction was important to him and that was what he bargained for in purchasing the lot that he purchased in this subdivision and that that was a feature that he did like.

I also so believe Mr. Shaheen when he said that this was just some boilerplate language that he put together for there to be a restriction. And, I'm sure that's what he did. But it's still is what people bargained for when they are purchasing to be in his neighborhood.

All right. So, what the defendants are relying on is Subsection 12. . . .

. . . .

So, the question for the Court is, and what's been argued by both sides, whether or not that is a valid cancellation of the Restriction 22, that's being relied on by Mr. Whatley?

What's been argued is a few things, that the Beaughs are single owners and the plural word owner should mean something.

The Court does not find that argument persuasive because I think the Beaughs are two people and they are a married couple, but they are still two people owning community property. So they are owners in the plural.

The question becomes for this Court whether or not they have a majority of the land, are they owners representing a majority of the land affected by these restrictions? And that's why I asked Mr. Drost what did he see the plus or minus to mean?

Because each of the other owners in this subdivision of Lots 1, 2, 3, and 4, have bargained for these restrictions. And, according to this map, all of them own 5 acres, plus or minus, and the Beaughs own 21.53 (sic) acres, plus or minus.

When I look at the transferring agreement from the previous owner to Mr. Shaheen, we're still not quite at the total.

So, whose burden is it? Whose burden is it to prove to me that the Beaughs have a majority of ownership? And, what does a plus or minus mean?

I think that burden falls with the Beaughs to show me that they have the ability to change these restrictions.

And, if I - - if the minus means something it means that they don't have a clear majority because I'm not sure if we're not 50/50. And if I'm not sure, that's not enough for the - - for them to say that they have met their burden to prove to me that they can make this change. And if they can't make the change, then the restriction, which Mr. Whatley is filing this lawsuit on, is a valid restriction. And I cannot find that it has been properly changed.

With that finding, I cannot rule that it's been changed.

On appeal, the Beaughs argue that allegations that the lot acreages are inconclusive were outside of the scope of the pleadings and should have been excluded as the Beaughs did not have the opportunity to properly defend the allegations. We find no merit to this claim. First, the Beaughs raised the issue of who is a majority landowner in their answer to the petition by alleging that, as majority landowners, they could amend the restrictions and delete the requirement that all driveways be located on the east property line. Second, the Beaughs did not object to the exhibits being admitted as evidence. The exhibits indicate the acreage of each lot was "plus or minus." Therefore, we find no error in the trial court's consideration of whether the total acreage of each lot was inconclusive.

Additionally, the Beaughs assert on appeal that the allegation that the total acreage of each lot was inconclusive was purely speculative and based on the

argument of counsel, not evidence. As to whether the trial court erred in its determination that the Beaughs did not have a clear majority allowing them to amend the original restrictions, we consider the exhibits. The evidence suggests that the acreage comprising a lot is "more or less" the number stated on the plat. For instance, Plaintiff 1—Subdivision Plat, states in the legal description: "All that certain tract or parcel of land, containing 41.53 acres, more or less[.]" Exhibit A to Plaintiff 6—Surveyor description, which includes the deed transferring title to Harry Shaheen Development, LLC from Crown Pine Timber, also describes the property as "All that certain tract or parcel of land, containing 41.53 acres, more or less[.]" Furthermore, Plaintiff 5—Plat, contains the acreage of each lot in the subdivision. After each lot's acreage, the plat contains a plus and minus symbol. As the plat shows, Lots 1 through 4 all contain five acres, plus or minus, for a total of twenty acres, plus or minus. Lot 5 contains 21.52 acres, plus or minus. Not only does 21.52 (Lot 5's approximate acreage) plus 20 (Lots 1 through 4's approximate acreage) not add up to 41.53 (the approximate total acreage of the subdivision), but only a very slight variation in the lot sizes would be needed to tip the majority out of the hands of the Beaughs. No other evidence or testimony was introduced to determine with certainty the size of each lot. Based on the record and evidence presented, we cannot say that the trial court was manifestly erroneous in determining that the lot acreages were ambiguous.

Accordingly, the trial court was not manifestly erroneous in determining that the Beaughs did not own a clear majority of the land in the Holbrook Court South Subdivision and, therefore, did not have the authority to amend the Restrictive Covenants and Conditions. The trial court properly determined that the original Restrictive Covenants and Conditions was valid and enforceable, requiring all

driveways to be constructed on the east property line.  We affirm the trial court's judgment, granting injunctive relief to the Whatleys.  Costs of this appeal are assessed to Appellants, the Beaughs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 20-593

**JOHNATHAN WHATLEY AND KATHERINE NICOLE WHATLEY**
**v.**
**DENNIS RAY BEAUGH AND TERESITA DIANE BACHMEYER**
**ROSEMOND BEAUGH**

**Saunders, J., dissents and assigns written reasons.**

I respectfully dissent. While I recognize that the burden of proof is on the Beaughs in this matter, that burden is to show more likely than not that they own a majority of the acreage in the subdivision. Here, the survey of the subdivision divides the land into five (5) lots. It shows that four (4) of the five (5) lots contain 5 acres "more or less" and that one lot, Lot 5 owned by the Beaughs, contains 21.52 acres "more or less."

The only direct evidence on whether Lot 5 contains a majority of the acreage of the subdivision is the testimony of Mr. Harry Shaheen who, according to the proposed majority opinion "agreed that the acreage designation for each lot are approximate, but pretty accurate, and that it 'seems' Lot 5 comprises a majority of the land in the subdivision." The record is devoid of any evidence contradicting Mr. Shaheen's view and devoid of any evidence suggesting that Lot 5 does not constitute a majority of the land in the subdivision.

In my view, the "more or less" disclaimer on each property description cuts both ways, and, under the evidence in the record before us, the only conclusion is that Lot 5 does contain a majority of the acreage in the subdivision. As such, I would find that the Beaughs did carry their burden of proof and would reverse.

JDS

1